# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | U.S.C.A. No. 07-50007 |
|---|---|
| Plaintiff, | U.S.D.C. No. 05CR1550-DMS |
| vs. | ORDER DENYING MOTION FOR NEW TRIAL |
| JOVANNI MENDOZA, | |
| Defendant. | |

Pending before the Court is defendant Jovanni Mendoza's amended motion for new trial, or in the alternative, for writ of coram nobis. The Court heard argument on the motion on December 3, 2009. John R. Kraemer appeared on behalf of the government, and J. Kerry Bader appeared on behalf of defendant. For the reasons set forth below, the motion is denied.

## I.
## BACKGROUND

On September 7, 2005, a federal grand jury returned a twelve-count indictment charging defendant with importation of marijuana in violation of 21 U.S.C. §§ 952 and 960 (count one), possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (count two), bringing in illegal aliens for financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) (counts three, five, seven, nine, and eleven), and transportation of illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II) (counts four, six, eight, ten and twelve).

On August 14, 2006, the Court, upon the government's motion, dismissed counts seven and

eight of the indictment. (RT 93.) Defendant waived trial by jury. Thereafter, the Court held a bench trial on August 14 through August 17, 2006, during which defendant was represented by counsel, Mr. Felix J. Martinez. (RT 88-709.) Defendant did not testify and called no witnesses. The Court found defendant guilty on all counts. (RT 701-708; *see* Doc. 40, Amended Judgment in a Criminal Case (March 22, 2007).)

On December 15, 2006, this Court sentenced defendant to 235 months custody on counts one and two, followed by five years supervised release; 120 months custody on counts three, five, nine, and eleven, followed by three years supervised release; and 60 months custody on counts four, six, ten, and twelve, followed by three years supervised release. All counts were ordered to run concurrently. The Court also imposed a $1000 penalty assessment, and ordered restitution in the amount of $9,874.57.

On December 21, 2006, defendant filed a notice of appeal. Thereafter, Magistrate Judge Louisa S. Porter appointed J. Kerry Bader to represent defendant on appeal. Defendant has yet to file an opening brief in the Ninth Circuit. Instead, defendant has obtained several stays in the Ninth Circuit to allow him to pursue relief in this Court. On January 19, 2009, defendant filed a motion for new trial under Federal Rule of Criminal Procedure 33, or in the alternative, for writ of coram nobis. On March 13, 2009, defendant moved to substitute his earlier motion with the instant motion. On March 16, 2009, defendant moved for discovery. In a written order filed March 17, 2009, this Court ordered defendant's previously filed motion for new trial withdrawn and his revised new trial motion filed. The Court ordered the government to file its opposition to defendant's revised motion by no later than April 24, 2009. The hearing on defendant's motion was continued several times at defendant's request, and finally was heard on December 3, 2009.

In an Order issued on March 25, 2009, this Court tentatively: (a) denied defendant's discovery requests in support of his ineffective assistance of counsel claim, finding that such a claim may not be raised in a new trial motion under Rule 33 of the Federal Rules of Criminal Procedure; (b) found defendant failed to make a showing that the government withheld exculpatory evidence and denied without prejudice defendant's discovery requests to the extent such requests related to asserted newly-discovered violations of the government's duty to disclose exculpatory evidence under *Brady*

*v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972); (c) denied defendant's request for grand jury transcripts because defendant failed to demonstrate a particularized need; and (d) denied defendant's remaining discovery requests as "untimely, speculative, or cumulative."

On March 27, 2009, the discovery motion was heard and the Court stood on its tentative rulings, with one exception. Pursuant to *United States v. Vogel*, 251 Fed. App. 399 (9th Cir. 2007), the Court ordered the government to produce any *Brady* material it had within its possession relating to United States Border Patrol Agent Mark Hansen, Cooperating Witness Cristie Sanchez, and Material Witnesses Martin Ramirez-Salinas and Eulalia Bautista.[1] The Court also quashed without prejudice subpoenas that defendant had served on the San Diego County Public Defender's and District Attorney's Offices, the University of California at San Diego, the California Department of Transportation, and attorney Alan Ferguson, counsel for the material witnesses.

## II.

## DISCUSSION

### A.  Jurisdiction

A motion for new trial based on newly discovered evidence must be made within three years after verdict. Fed. R. Crim. P. 33(b)(1). If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case. *Id.* "The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Trulis v. Barton*, 107 F.3d 685, 694-95 (9th Cir. 1995). However, "Rule 33 permits a district court to entertain and deny a motion for a new trial based upon newly discovered evidence without the necessity of a remand." *United States v. Frame*, 454 F.2d 1136, 1138 (9th Cir. 1972). As such, this Court "ha[s] jurisdiction to entertain the [Rule 33] motion and either deny the motion on its merits or certify its intention to grant the motion to the Court of Appeals, which c[an] then entertain a motion to remand the case." *United*

---

[1] After conducting a further investigation, the government found no other *Brady* material. The only possible exculpatory evidence not disclosed by the government pretrial related to cooperating witness Cristie Sanchez and a "Confidential Source Agreement" she entered into with the Drug Enforcement Administration. For reasons discussed in text, *infra*, the government's failure to disclose such evidence did not violate *Brady* and does not warrant a new trial.

1  *States v. Cronic*, 466 U.S. 648, 667 n.42 (1984). S*ee also Frame*, 454 F.2d at 1138 ("Only after the
2  district court has heard the motion and decided to grant it is it necessary to request a remand from the
3  appellate court.").

### B.   Motion for New Trial

Defendant's motion for new trial is premised on two categories of "newly discovered" evidence: (1) undisclosed exculpatory evidence; and (2) evidence of ineffective assistance of trial counsel.

#### 1.   Exculpatory Evidence

Generally, a defendant who seeks a new trial based on new or newly discovered evidence must show: (1) the evidence is newly discovered; (2) the failure to discover the evidence is not attributable to a lack of diligence by the defendant; (3) the evidence is material to the issues at trial; (4) the evidence is neither cumulative nor impeaching; and (5) the evidence indicates that a new trial would probably result in an acquittal. *See United States v. Jackson*, 209 F.3d 1103, 1106 (9th Cir. 2000); *United States v. Sarno*, 73 F.3d 1470, 1507 (9th Cir. 1995).

In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). "To establish a *Brady* violation, the evidence must be (1) favorable to the accused because it is either exculpatory or impeachment material; (2) suppressed by the government, either willfully or inadvertently; and (3) material or prejudicial." *United States v. Blanco*, 392 F.3d 382, 387 (9th Cir. 2004). Evidence is material if the defendant establishes that "'the government's evidentiary suppression undermines confidence in the outcome of the trial.'" *United States v. Jernigan*, 492 F.3d 1050, 1054 (9th Cir. 2007) (quoting *Kyles v. Whitley,* 514 U.S. 419, 434 (1995)). The determination of whether suppressed evidence is material is made in light of the entire record. *United States v. Agurs*, 427 U.S. 97, 112-13 (1976). "If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." *Id.*

Impeachment evidence is exculpatory evidence within the meaning of *Brady. See Giglio v. United States,* 405 U.S. 150, 154 (1972); *see also Bagley*, 473 U.S. 667, 676 (1985). *Brady/Giglio*

information includes "material . . . that bears on the credibility of a significant witness in the case." *United States v. Brumel-Alvarez*, 991 F.2d 1452, 1461 (9th Cir. 1993) (quoting *United States v. Strifler*, 851 F.2d 1197, 1201 (9th Cir. 1988)). *Brady/Giglio* impeachment evidence is favorable "when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." *Id.* at 1458 (citing *Giglio*, 405 U.S. at 154). However, "newly discovered evidence to impeach a government witness does not warrant a new trial when the evidence would not have affected the jury's assessment of the witness's credibility and when the witness was subjected to vigorous cross-examination." *United States v. Endicott*, 869 F.2d 452, 456 (9th Cir. 1989) (finding new trial not warranted where there was substantial other evidence, including a corroborating tape recording).

Defendant argues that several *Brady* violations occurred in the present case, contending the government failed to disclose exculpatory impeachment evidence relating to: (1) cooperating witness Cristie Sanchez; (2) material witnesses Martin Ramirez-Salinas and Eulalia Bautista; (3) U.S. Border Patrol Agents Mark Hansen and Donald White; and (4) evidence of other wrong-way driving alien smugglers.

Defendant argues that the government should have disclosed any and all evidence relating to Ms. Sanchez's cooperation with the Drug Enforcement Administration (DEA). (Mot. at 10.) The government maintains that all relevant and discoverable material was disclosed to the defense and that no exculpatory evidence was derived from its pre- and post-trial investigations. (Opp. at 3.) The government indicates it did not disclose a standard DEA Form 473, Confidential Source Agreement, but nevertheless fulfilled its *Brady* obligations as it disclosed pre-trial that Ms. Sanchez began working for the DEA as an informant on August 31, 2005, after defendant's arrest, and was paid $770 by the DEA. (*Id.* at 41.) At trial, and in response to the Court's question, Ms. Sanchez confirmed that she had been given "use immunity" for her testimony against defendant. (Trial Tr. at 332-33.) Ms. Sanchez also testified that the $770 payment was not made in connection with her testimony against defendant. (*Id.* at 337.) She further testified that the DEA had advised her probation officer that she was cooperating with the government. (*Id.*) Beyond this, Ms. Sanchez testified that she had been given no promises to induce her to testify against defendant. (*Id.* at 337.) Ms. Sanchez was fully cross-examined on a number of issues relating to her testimony. (*See id.* at 380-90.) The fact-finder,

in this case the Court, found that Ms. Sanchez's testimony was fully corroborated by eyewitness testimony, 404(b) evidence, and physical evidence. (*Id.* at 701.)

At the hearing on defendant's motion for new trial, the government revealed that upon further investigation it discovered that Ms. Sanchez had been paid an additional $500 after testifying in this case and had renewed her commitment to work with the DEA by executing another DEA Form 473. Government counsel represented that at the time of trial he was unaware of these events, as the payment and execution of the 473 Form apparently occurred after Ms. Sanchez testified. The Court finds that government counsel acted in good faith at all times and further, that disclosure of such evidence would "not have affected the [fact-finder's] assessment of the witness's credibility." *Endicott*, 869 F.2d at 456. As indicated, Ms. Sanchez was fully cross-examined on a number of issues regarding her testimony, including her cooperation with the government. The additional details relating to the level of her cooperation (*e.g.,* payment following her testimony and execution of other DEA Forms 473), do not warrant a new trial. The government presented credible independent evidence which corroborated the testimony of Ms. Sanchez, and which established beyond a reasonable doubt the identity of defendant as the driver of the vehicle.

Defendant also argues that the government should have disclosed other relevant information relating to Ms. Sanchez, including, for example, Ms. Sanchez's cell phone call log that she deleted while in the back of a police cruiser following her arrest. (Mot. 24-35.) The problem here is that defendant has not proven the existence of such evidence, let alone any attempt by the government to suppress it.[2]

Defendant next argues that Material Witness Ramirez perjured himself while testifying at trial. (Mot. at 37.) According to defendant, Mr. Ramirez responded "no" when asked if he had "spoken with

---

[2] At the hearing on defendant's motion for new trial, defendant also argued that there was "newly discovered" evidence regarding (a) a taped interview of Ms. Sanchez in which she stated another man, not defendant, was the driver of the vehicle, and (b) the existence of tattoos on defendant's forearm, which controverted eyewitness testimony at trial. This evidence, however, is not newly discovered. The taped interview was produced pretrial, and the tattoo evidence was raised at trial by defense counsel. In addition, defendant's tattoo evidence does not advance his cause as it relates to his left forearm, whereas the trial testimony in which witnesses referenced defendant's tattoos as an identifying feature related to defendant's *right* forearm. Defendant's characterization of Ms. Sanchez's taped interview also appears questionable. *See* Affidavit of Agent Andrew Kahl (Doc. No. 158-1.) Moreover, disclosure of the foregoing evidence – even accepting it most favorably to defendant – would not warrant a new trial in light of the compelling evidence against defendant.

1  anyone from the government before today." (*Id.*)  The government argues that a charge of perjury is
2  "baseless." (Opp. at 48.)  Mr. Ramirez testified as to interviews by government agents, including that
3  he was shown photographic line ups after his arrest. (Trial Tr. 426-27.)   Mr. Ramirez also
4  acknowledged that he gave a video-interview with the Border Patrol agents and met with the
5  prosecutor and agents before testifying. (*Id.* at 431-32.)  Placed in context, the Court cannot say Mr.
6  Ramirez perjured himself.

7  Defendant also argues that the government failed to disclose evidence of meetings involving
8  government agents, Mexican authorities, and the material witnesses in this case prior to trial, as well
9  as any agreements between government agents and those material witnesses. (Mot. 38-40.)  However,
10 the government correctly points to the fact that it disclosed the material witnesses' written statements
11 made to Mexican authorities at the Chula Vista Border Station on July 13, 2006.  (Opp. at 48; *see*
12 Pretrial Discovery, at 776-78, 779-80, 781-82.)  It also disclosed information relating to their
13 immigration status and authorization to be in the United States as witnesses. (*See* Pretrial Discovery,
14 at 223-96.)  The remainder of defendant's arguments are speculative, as he provides no evidence of
15 any undisclosed exculpatory evidence. *See Wood*, 516 U.S. at 6-8.

16 Defendant next argues that the government should have disclosed the factual findings made
17 by a trial judge in a different case, *United States v. Hall,* No. 07-cr-0619 L (S.D. Cal.), that Agents
18 Hansen and White lacked reasonable suspicion to stop the defendant in that case for alien smuggling.
19 The failure to disclose such evidence, however, does not amount to a *Brady* violation.  First, the
20 government was under no obligation to disclose this information, because it could not have known
21 during the prosecution of the present case what the agents would do *two years later* in the *Hall* case.
22 Second, the Court is not convinced in any event that the finding in *Hall* amounts to impeachable
23 evidence, as the trial judge in *Hall* did not find that the agents were untruthful. (*See*  07-cr-0619 L,
24 Doc. 49.)

25 Finally, defendant argues that the government committed *Brady* error by failing to disclose
26 evidence of other suspected alien smugglers operating around the border area in white SUV's. (Mot.
27 at 75-80.)  This issue already was raised by defendant pretrial and denied by the Court, so it cannot
28 form the basis of a *Brady* violation.  In any event, *Brady* does not "create a broad, constitutionally

required right of discovery." *Bagley,* 473 U.S. at 675 nn.6-7. In defendant's pretrial request for such discovery, he sought evidence of other wrong-way drivers "that could *possibly* lead to a third-party culpability defense, something of that sort." (Emphasis added.) Defendant's request was speculative and invited a fishing expedition, and thus it was denied.

Defendant further argues that he recently discovered evidence of the "El Migue" and other alien smuggling organizations that engage in wrong-way driving and ramming border patrol vehicles to further their smuggling objectives. (Mot. at 77-80.) Defendant argued at the hearing on his new trial motion that failure to disclose such evidence warrants a new trial, citing *Unites States v. Jernigan*, 492 F.3d at 1050. In *Jernigan*, the Ninth Circuit held a new trial was warranted where the government failed to disclose evidence relating to a second bank robbery suspect who matched the defendant's physical description ("a short, Hispanic woman with acne"), was arrested shortly after the defendant, and robbed the same bank defendant was accused of robbing, as well as other nearby banks, using the same alleged modus operandi. *Id.* at 1054-56. The problem for defendant here, however, is that generalized evidence of other alien smuggling organizations and their activities is not "material" under *Brady*. Defendant's proffered "new evidence" lacks the specificity noted in *Jernigan*, where the defense presented new evidence of another specific suspect whose physical description, activities and modus operandi matched the defendant and gave rise to a third party culpability defense.

The court in *Jernigan* also noted that the government's case was based solely on eyewitness testimony and that such evidence "is the least reliable, especially where unsupported by corroborating evidence." 492 F.3d at 1054. Thus, the court concluded that the government's "evidentiary suppression undermine[d] confidence in the outcome of the trial." *Id.* Here, the government's case was not based solely upon eyewitness testimony, let alone with eyewitnesses who, as in *Jernigan*, had only a fleeting opportunity to view a suspect under stressful circumstances. In the present case, several material witnesses testified on behalf of the government. These witnesses all spent significant time with defendant: they were with him at a "load house" the day before the incident in question, observed him there in a number of different settings, heard him speak and heard others refer to him by name, and observed him on the date of incident both before and after he took the wheel. These witnesses were credible, and their ability to accurately identify defendant under the circumstances was

persuasive. Their identification also was corroborated by (a) cooperating witness Cristie Sanchez, who knew defendant well, and (b) evidence of other crimes committed by defendant, all of which circumstantially established defendant's motive, opportunity, intent and identification *vis-a-vis* the charged crimes. Based upon all the evidence, the Court was left with no doubt that defendant was the driver of the vehicle and committed the charged crimes.

For these reasons, defendant has failed to show that a new trial is warranted on the basis of alleged *Brady* violations. The evidence identified by defendant is not material, as the government's alleged suppression of the evidence does not undermine confidence in the outcome of the trial. The government presented overwhelming evidence, all of which was consistent, corroborated and credible.

### 2. Ineffective Assistance of Counsel

Defendant seeks to demonstrate ineffective assistance of counsel through his Rule 33 motion. The Ninth Circuit has "rejected the use of a Rule 33 motion for new trial based on 'newly discovered evidence' involving the ineffective assistance of counsel." *United States v. Allen*, 153 F.3d 1037, 1045 (9th Cir. 1998) (quoting *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)). As explained in *United States v. Hanoum*, "a Rule 33 motion based upon 'newly discovered evidence' is limited to where the newly discovered evidence relates to the elements of the crime charged." 33 F.3d 1128, 1130 (9th Cir. 1994). Newly-discovered evidence of ineffective assistance of counsel does not satisfy this requirement. *Id.*

In addition, "evidence of ineffectiveness will seldom if ever indicate that a new trial would *probably* produce an acquittal." *Id.* (emphasis in original). So it is here. Any deficiency in counsel's performance was not prejudicial to defendant under *Strickland v. Washington*, 466 U.S. 668 (1984), in light of the overwhelming evidence. Accordingly, defendant's motion is denied on this ground.

### C. Writ of Coram Nobis

Finally, defendant seeks relief through writ of coram nobis. (Mot. at 6-8.) The government correctly argues that such relief is unavailable to defendant. "Coram nobis is an extraordinary writ, used only to review errors of the most fundamental character." *United States v. Matus-Leva*, 287 F.3d 758, 760 (9th Cir. 2002). The Court has the power to issue the writ under the All Writs Act, 28 U.S.C. § 1651(a). *United States v. Morgan*, 346 U.S. 502 (1954). To qualify for coram nobis relief,

defendant must establish: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of a fundamental character." *United States v. Kwan*, 407 F.3d 1005, 1011 (9th Cir. 2005). Failure to meet any one of these requirements is fatal to defendant's requested relief. *Matus-Leva*, 287 F.3 at 761. Because defendant is still in custody and has an appeal pending, more usual remedies are available to him. *See id.* ("A person in custody may seek relief pursuant to 28 U.S.C. § 2255. Because the more usual remedy of a habeas petition is available, the writ of error coram nobis is not.") Defendant's motion is therefore denied on this ground.

## III.
## CONCLUSION

For the foregoing reasons, defendant's motion is denied.

**IT IS SO ORDERED**.

DATED: December 10, 2009

_____
HON. DANA M. SABRAW
United States District Judge